UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

DAVID DEWAYNE CHADWELL                                        PLAINTIFF

v.                                         CIVIL ACTION NO. 5:22-cv-39-BJB

HEATHER CARAWAY et al.                                       DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff David Dewayne Chadwell, a convicted prisoner at the Marshall County

Detention Center (MCDC) at the time pertinent to the complaint, brought this 42 U.S.C. § 1983

lawsuit.  This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and

*McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by*

*Jones v. Bock*, 549 U.S. 199 (2007).  For the following reasons, the Court dismisses some claims

and allows Plaintiff the opportunity to amend others.

**I. STATEMENT OF CLAIMS**

Plaintiff sues MCDC Jailer Roger Ford, Nurse Heather Caraway, Chief Deputy Shawn

Goard, Deputy Larry Simmons, and the "City of Benton/Marshall County."

Plaintiff's claim against Defendant Ford states, in its entirety: "The hot water was to[o]

hot[.]  I got 2nd degree burn on my right arm which left a large scar."

Plaintiff next alleges that after his arm was burned he filled out a "request/sick call" to be

seen, but Defendant Caraway did not see him for 13 days.  He also states that he has "stage 3"

cirrhosis and Hepatitis C and that Defendant Caraway "kept saying [I'd] see a provider and it

took 30+ days for that."

Finally, and more concerningly, Plaintiff alleges that in November 2021 Defendant

Simmons handcuffed him inside the "pod" and tried to push him out while Defendant Goard,

who was outside of the pod, "was popping the door open and slamming it back closed on my head/face about 3 or 4 times." He continues:

> Then Shawn [Goard] and Larry [Simmons] took me up front and pushed me up against the wall while 4 or 5 guards held me in the restraint chair and I was still hand cuffed and restrained me while Shawn Goard hit and beat on me with his closed fist. Then Shawn Goard pulled me in a small hallway. Trace Croft took my handcuffs off and strapped me down then Shawn apologized and started wiping the blood off my face, then telling me about him being in the war where he killed 3 people. And from the handcuffs my thumb and index finger stays numb.

Complaint at 4–5 (cleaned up).

As relief, Plaintiff requests damages and for Defendants "to lose their jobs."

Plaintiff indicates on the court-provided complaint form that he is suing Defendant Caraway in her official capacity. But Plaintiff does not indicate whether he is suing the other Defendants in their individual or official capacities.

Separate from his complaint form, Plaintiff filed a statement asking the Court, "if there's anything wrong" with his filing, to "please highlight it and send it back to me and I'll fill it out," or else he would ask someone else to fill out the form on his behalf. *See* DN 1-1 at 1 (cleaned up). Plaintiff at least implies that he was transferred to the McCracken County Jail after he filed a complaint while detained at the Marshall County Detention Center, where "a lot of stuff goes on … but everyone is afraid to do anything." *Id.*

## II. STANDARD OF REVIEW

When a prisoner sues a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the case if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When screening the complaint, the Court must construe it in the light most favorable to Plaintiff and accept well-pled allegations as

true.  *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quotation omitted).  And while a court must liberally construe *pro se* pleadings, *see id.* at 471; *Boag v. MacDougall*, 454 U.S. 364, 365 (1982), a complaint must include "enough facts to state a claim to relief that is plausible on its face" in order to avoid dismissal, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III. ANALYSIS

#### A.  Claims against Defendants Goard and Simmons

Plaintiff alleges that Defendants Goard and Simmons handcuffed, tased, and beat him. According to the complaint, they repeatedly hit him in the head and neck area.  And they did so with no justification.  Complaint at 4–5.  The Court construes these allegations as claims that these Defendants unnecessarily and wantonly inflicted pain on him in violation of the Eighth Amendment.  *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

As noted above, the Complaint does not indicate in what capacity Plaintiff is suing Defendants Goard and Simmons.  The Court "assume[s] that a government official is being sued in his official capacity, unless the pleadings provide notice that he is being sued individually." *Vittetoe v. Blount Cnty., Tenn.*, 861 F. App'x 843, 851 (6th Cir. 2021) (citing *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc)).  An official-capacity suit against a municipal employee (as Goard and Simmons appear to be) is construed as a suit against the municipality itself, which requires a showing not only of a violation, but also of a governmental custom or policy that caused that violation, as described below.  *See, e.g., Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).  Because of the limitations on government liability and a concern that defendants receive proper notice of their liability, § 1983 plaintiffs must plead the "capacity" in which they sue officials.  *Moore*, 272 F.3d at 772 (citing *Wells v. Brown,* 891 F.2d 591, 592 (6th Cir. 1989)).

Individual-capacity suits, meanwhile, "seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). As discussed, "§ 1983 plaintiffs must clearly notify defendants of the potential for individual liability." *Moore*, 272 F.3d at 773. Although plaintiffs using this court's §1983 complaint form may (and generally should) satisfy this notice requirement by simply ticking the box for "individual capacity," their failure to do so does not automatically result in dismissal. *Id.* at 772.

When—as is largely true here—"a plaintiff 'fails to affirmatively plead capacity in the complaint,'" judges "'look to the course of proceedings to determine whether' the official has notice." *Vittetoe*, 861 F. App'x at 851 (quoting *Moore*, 272 F.3d at 773). That "course of proceedings" test "considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity[1], to determine whether the defendant had actual knowledge of the potential for individual liability,'" as well as "subsequent pleadings if they are filed in the early stages of litigation." *Id.* (quoting *Moore*, 272 F.3d at 772 n.1).

The Plaintiff's complaint specified that he sued one Defendant in her official capacity, but otherwise didn't directly address this question. The "course of proceedings" reflects considerations that cut in both directions with respect to Goard and Simmons. On the one hand, supporting an individual-capacity suit, is the request for damages, *Estate of Young v. Martin*, 51 F. App'x 509, 512–13 (6th Cir. 2002), the nature of the excessive-force claim against individual officers, *Moore*, 272 F.3d at 772 n.1, and the fact that Plaintiff separately sues the municipal government and one other official-capacity Defendant. On the other hand, the Complaint says

---

[1] The "nature of the defenses raised," of course, will not often be implicated in the § 1915A screening stage, which occurs before defendants are served.

4

nothing expressly about suing officers in their individual capacities, requests forward-looking relief (an injunction to fire officers) that presumably would run against the employer, and concerns actions taken in the jail under color of law.  Although the question is close, the Court concludes that the Complaint and subsequent filings have done enough to place the Defendant officers on notice of their potential civil liability.  *Moore*, 272 F.3d at 773–74.  Particularly relevant is the forgiving reading afforded *pro se* filings generally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and the specific filing here asking the Court to account for Plaintiff's limited understanding of the law and requesting an opportunity to correct any mistakes.  DN 1-1 at 1.

To the extent Plaintiff did in fact intend to file official-capacity claims against Goard, Simmons, and the other named Defendants, however, those would be deemed filed against the entity that employs them—presumably the City of Benton or Marshall County.  *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil-rights suit against county clerk of courts, in his official capacity, was equivalent of suing clerk's employer—the county).  Plaintiff has named both the City and County as defendants as well, as discussed below.  This supports the interpretation that Plaintiff named Goard and Simmons in their individual capacities; official-capacity claims against them and the relevant municipalities would introduce surplusage.

As to the substance of Plaintiff's allegations, the claim against Goard and Simmons survives screening under § 1915A because it sets forth plausible allegations that—if proven true—could establish liability under § 1983.  The Eighth Amendment prohibits the unnecessary and wanton infliction of pain by state actors.  To establish liability on this basis, a plaintiff must allege that the force used against him was objectively serious and inflicted to cause harm rather than for the good-faith purpose of maintaining prison discipline.  *Williams*, 631 F.3d at 383.  The complaint plausibly alleges that he was beaten and tased repeatedly, without provocation, and for

5

no good-faith disciplinary purpose.  This is sufficient to state a claim that survives the screening phase under § 1915A.

### B. Claims against Defendant Caraway

Plaintiff sues Defendant Caraway in her official capacity, alleging that after his arm was burned he filled out a "request/sick call" to be seen, but she did not see him for 13 days; and that she "kept saying [he would] see a provider [for his stage 3 cirrhosis and Hepatitis C] and it took 30+ days for that."  This is best construed as a claim that Caraway was deliberately indifferent to a serious medical need in violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

Plaintiff's official-capacity claims against Defendant Caraway fail to state a claim because he does not allege that a municipal policy or custom resulted in a violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  As noted above, an official-capacity suit against a municipal employee is, in effect, a suit against the municipality itself.  *See, e.g., id.* at 690 n.55.  And a municipal government, as the Supreme Court has recognized, is not automatically liable for "an injury inflicted solely by its employees or agents."  *Id.* at 694; *id.* at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor.") (emphasis in original); *see also Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (no vicarious liability for constitutional violations committed by city employees).  As a general matter, § 1983 "liability cannot be based on a theory of respondeat superior," also known as the "vicarious liability" of an employer for the acts of an employee.  *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995).

Instead, the municipality may be held liable only if the government itself is to blame for the unconstitutional acts—that is, if it adopted or ratified a policy or custom that caused the harm

inflicted by its officers or employees.  *Monell*, 436 U.S. at 694 ("the government as an entity is responsible under § 1983" only "when execution of a government's policy or custom . . . inflicts the injury").  Congress did not render municipalities liable, in other words, "unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Id*. at 691.

Proving this requires a plaintiff to "point to a municipal 'policy or custom' and show that it was the 'moving force' behind the constitutional violation."  *Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020) (quoting *Monell*, 436 U.S. at 694).  A § 1983 plaintiff must show that a supervisory official "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [subordinate]."  *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (internal quotation marks and citation omitted).  Here, Plaintiff has not identified any custom or policy which is responsible for the alleged constitutional violation by Caraway.  So any official capacity claim by the Plaintiff against this Defendant fails.

Even if Plaintiff chose to file an amended complaint naming Caraway as a Defendant in her individual capacity, moreover, his allegations as presently stated would be insufficient to make out an Eighth Amendment claim for deliberate indifference to a serious medical need.

The Eighth Amendment protects convicted prisoners from "cruel and unusual punishments."  U.S. Const. amend. VIII.  The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners may constitute the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *See Estelle*, 429 U.S. at 104-05; *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994).  As a decision of this Court recently explained:

> Deliberate indifference includes objective and subjective aspects: (1) a substantial (objective) risk of serious harm and (2) the official's (subjective) knowledge and disregard of that substantial risk. *Id*. Deliberate indifference "entails something more than mere negligence." [*Farmer v. Brennan*, 511 U.S. 825, 835 (1994)].

7

Instead, the Eighth Amendment standard is akin to criminal recklessness, requiring actual awareness of the substantial risk. *Id*. at 839-40.

*Brown v. Clark*, No. 3:22-CV-21, 2022 WL 3355805, at *2 (W.D. Ky. Aug. 12, 2022).

Plaintiff's alleged 13-day delay in being seen by Defendant Caraway for his burn, as described in the Complaint, does not appear to amount to deliberate indifference to a serious medical need.  Except for a scar, Plaintiff alleges no ill effects from not being seen earlier, such as pain or an open wound.  Nor does Plaintiff allege that he notified Defendant Carraway of anything other than the burn on his arm.[2]

Plaintiff also alleges that Defendant Caraway "kept saying" Plaintiff would "see a provider" for his "stage 3" cirrhosis and Hepatitis C, but "it took 30+ days."  He does not state that it took Defendant Caraway more than 30 days to see him, but that it took that long to see a different provider.  The Complaint doesn't indicate whether the provider in question was inside or outside the Marshall County Detention Center.  Regardless, Plaintiff does not allege that Defendant Caraway had any control over that provider's schedule.  And he does not allege that he suffered any ill effects from this delay.  Any motion to amend the Complaint to name Defendant Caraway in her individual capacity would (at a minimum) have to address these shortcomings to avoid denial for futility under § 1915A.  *See LaFountain v. Harry*, 716 F.3d

---

[2] A number of district courts have held that mere allegations of a burn are insufficient to state a claim for deliberate indifference absent further evidence that the treating defendant was aware of excessive risks to the plaintiff. *See, e.g.*, *Couch v. Brooks*, No. 4:20-CV-P199, 2021 WL 261275, at *5 (W.D. Ky. Jan. 26, 2021) ("The Court will assume for purposes of this initial review that Plaintiff's alleged third-degree burn constitutes a sufficiently serious medical need to satisfy the objective component of his claim.  However, Plaintiff's allegations do not establish that any Defendant was deliberately indifferent to this medical need."); *Spearman v. Bell*, No. 9:13-CV-290, 2016 WL 5339595, at *5 (E.D. Tex. Aug. 29, 2016) (prisoner whose arm sustained second-degree burns from hot water failed to state a claim for deliberate indifference because—although he showed defendant the burned skin—he did not plead facts suggesting defendant was aware of an excessive risk of harm or that she actually inferred such a risk); *Calhoun v. N.Y.C. Dep't of Corr.*, No. 10 CIV. 182, 2014 WL 144659, at *10 (S.D.N.Y. Jan. 14, 2014) ("Plaintiff has not alleged any facts that suggest that his burns are so debilitating that the failure to treat them subjected him to a significant risk of harm."); *Cole v. Fischer*, No. 08CV512, 2009 WL 3734343, at *4 (W.D.N.Y. Nov. 4, 2009) ("As for plaintiff's alleged second-degree burns, … [c]ourts in those situations have held that delays in treatment of second-degree burns did not rise to level of deliberate indifference[.]").

944, 951 (6th Cir. 2013) (Under Federal Rule of Civil Procedure 15(a), "a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the [Prison Litigation Reform Act].")

### C. Claim against Defendant Ford

Plaintiff makes only one claim against Defendant Ford: that excessively hot water at the prison caused a second-degree burn on his arm.  Complaint at 4.  As with the claims against Goard and Simmons, Plaintiff did not specify whether he was suing Ford in his individual capacity.  And the analysis of whether the "course of proceedings" indicate the claim against Ford is best understood as one in his individual or official capacity is similar to the analysis set forth above regarding the claims against those two Defendants.  These claims all seek injunctive relief and damages and accompany the same claims against the municipality and another named defendant sued in her official capacity.  One relevant difference exists, however: unlike the excessive-force claims, the non-specific allegations against Ford do not discuss his individual fault or liability and instead focus on his role as the leader of the governmental institution. *Contra Moore*, 272 F.3d at 772 n.1.  Therefore the allegations would not put the Defendant on notice as required by the Sixth Circuit and Supreme Court precedent discussed above.  The Complaint says nothing about Ford's role (if any) regarding the heat of the water at the jail; it says only that he happens to be the jailer.

So the Court construes this claim as an official-capacity suit. *Moore*, 272 F.3d at 772–73. And for the same reasons set out above, a suit against the municipality would fail because Plaintiff alleges no policy or custom regarding the water temperature that could establish any causation under § 1983—even assuming the allegations somehow amounted to a constitutional violation.  In any case, the claims against Ford would fail as currently pleaded even if Plaintiff

9

intended to sue Ford in his individual capacity.  Defendant Ford cannot be personally liable simply because he is the MCDC jailer.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("§ 1983 liability must be based on more than respondeat superior, or the right to control employees").  Additionally, the hot-water incident appears to be a one-time occurrence.  *See* Complaint at 4.  "Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount."  *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017).  Nor has Plaintiff alleged any personal involvement by Defendant Ford that resulted in the water being too hot.  In "§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  This, Plaintiff does not do.  So the Court dismisses Plaintiff's claim against Defendant Ford.  As noted above, if Plaintiff elects to move to amend the complaint, he must allege facts that would support a good-faith claim that Ford violated of the Eighth Amendment by providing inmates with water that was dangerously hot.

### D. Claim against City of Benton/Marshall County

As explained above, Plaintiff's official-capacity claim against Defendant Caraway is, in effect, a claim against the municipality she works for.  The Complaint is ambiguous about whether that is the City of Benton or instead Marshall County.  It lists as the final defendant the "City of Benton/Marshall County."  Regardless of which entity might be the proper employer or entity responsible for the Marshall County Detention Center, Plaintiff's allegations fail to state a claim for the same reasons they would fail to set forth a valid official-capacity claim against the other Defendants: the Complaint does not alleged that either the City or the County is responsible for a municipal policy or custom that caused Plaintiff's injuries.  Plaintiff has not, as

§ 1983 requires, alleged that "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.  So these claims likewise fail.

### E. Request for Defendants to lose their jobs

As to Plaintiff's request for Defendants "to lose their jobs," the Court lacks the authority to grant this type of relief under § 1983 in circumstances such as the one Plaintiff describes. That statute authorizes courts to award damages or injunctive relief for constitutional violations. An injunction to fire a violating employee by necessity runs against the employer, which in this case appears to be either the City of Benton or Marshall County.  The requirements of *Monell* apply to § 1983 actions seeking injunctive relief against a municipal government.  *See Los Angeles County, v. Humphries*, 562 U.S. 29, 36–37 (2010).  Because Plaintiff has not alleged that his injury was the result of a municipal policy or custom, therefore, he cannot seek injunctive relief against the municipality.  So this request for relief fails.

Even if Plaintiff *had* alleged a policy or custom that caused a constitutional violation, moreover, it is at best questionable whether a federal district court may enter an injunction requiring a municipality to fire an employee under § 1983.  Several district-court decisions have held as much.  *See, e.g., Theriot v. Woods*, No. 2:09-cv-199, 2010 WL 623684, at *4 (W.D. Mich. Feb. 18, 2010) (court lacked "authority under 42 U.S.C. § 1983 to . . . terminate the employment of [the defendants]").  And for understandable reasons: an injunction to fire the offending employees would not remedy any ongoing harm where (as here) the plaintiff relies on past rather than future actions of that employee.  After all, "'a real and immediate threat that' [harm] will occur in the future … is required for injunctive relief." *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983)).  Nothing in this Complaint indicates that the firing of the

employees is necessary to halt an ongoing constitutional violation or prevent future harm; instead, the injunction seems to be a remedy for past harm.

On either ground, therefore, Plaintiff's claim seeking an injunction to fire the offending employees cannot survive.  The Court dismisses it under § 1915A.

### F. Leave to Amend

Consistent with § 1915A, the Court allows the claims against Defendants Goard and Simmons to move forward but dismisses the claims against the remaining Defendants.  Under Rule 15(a) of the Federal Rules of Civil Procedure, "a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the [Prison Litigation Reform Act]." *LaFountain*, 716 F.3d at 951.  Should Plaintiff seek to pursue his dismissed claims, he may file a motion to amend the complaint, specifying whether any additional claims are filed against Defendants in their individual or official capacities, within 30 days.  Otherwise the case will proceed on the Goard and Simmons claims alone.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court

**DISMISSES** Plaintiff's claims against Defendants Ford, Caraway, and the City of Benton/Marshall County, as well as Plaintiff's request to have Defendants fired from their jobs for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A;

**DIRECTS** the Clerk to terminate Roger Ford, Heather Caraway, and the City of Benton/Marshall County as parties to this action; and

**ORDERS** that **within 30 days** from the entry date of this Memorandum Opinion and Order, Plaintiff may file a motion to amend the denied portions of the complaint.

If no motion to amend is filed within 30 days, or after adjudication of a motion to amend,

the Court will enter a Service and Scheduling Order to govern the development of the continuing

claims.

Date:   November 7, 2022

Benjamin Beaton, District Judge

United States District Court

cc:     Plaintiff, *pro se*
        Defendants
        Marshall County Attorney
B213.009

13